J. S04043/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ROBERT UNDERCUFFLAR COPELAND, | : | No. 1262 MDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, June 29 2017,
in the Court of Common Pleas of Lancaster County
Criminal Division at No. CP-36-CR-0001419-2017

BEFORE:  SHOGAN, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED APRIL 20, 2018**

Robert Undercufflar Copeland appeals the judgment of sentence in which the Court of Common Pleas of Lancaster County sentenced him to an aggregate term of imprisonment of 2½ to 6 years for simple assault, criminal trespass – break into structure, indecent assault without consent of the other, and indecent exposure.[1]  After careful review, we affirm.

The record reflects that appellant and Melissa England ("England") were involved in a romantic relationship for approximately 8 months.  For a short period, they shared an apartment at 325-G Eden Road, Manheim Township, Lancaster County, Pennsylvania.  On January 9 and 11, 2017, the Manheim Township Police Department was called to 325-G Eden Road

---

[1] 18 Pa.C.S.A. § 2701(a)(3), 18 Pa.C.S.A. § 3503(a)(1)(ii), 18 Pa.C.S.A. § 3126(a)(1), and 18 Pa.C.S.A. § 3127(a), respectively.

because appellant was breaking England's computers. (Notes of testimony, 6/27/17 at 75.) Officer Evan Eshleman ("Officer Eshleman") was dispatched to 325-G Eden Road. When he arrived, he found appellant standing on the porch with a few suitcases. (*Id.* at 78.) England was inside the apartment. England informed the police officer that her name was on the lease and that she wanted appellant removed from the premises. Officer Eshleman and another officer told appellant of England's wishes, and he left the property. (*Id.* at 79-80.)

On January 11, 2017, the Manheim Police Department received a call that there was a domestic situation at England's residence where a gentleman was trying to break in. (*Id.* at 85.) A police officer found appellant about a block away.

England testified at trial that she had allowed appellant to live with her because, at the time, appellant did not have a job and was homeless. (*Id.* at 92.) On January 12, 2017, England was awakened from sleep on the sofa to the sound of appellant calling her name. Appellant broke in through the kitchen window. England reported that appellant was intoxicated and that he said, "I'm going to see if you got some n[------] or some guys here so he runs up the steps." (*Id.* at 97.) According to England, when appellant came downstairs, he wanted to have sex with her, started kissing her, removed her clothing, and exposed himself to her. Appellant also took a screwdriver to England's neck and told her, "I could kill you if I wanted to." (*Id.* at 99.)

When appellant accused England of having sex with his friend and spit in her face, she called the police. (*Id.* at 99.)

On cross-examination, England admitted that she gave appellant permission to write letters to her. (*Id.* at 110.) On redirect examination, England was asked about her decision to allow appellant to write letters to her and her son:

> Q. Can you tell the jury why you were okay with the letters at that point?
>
> A. He was sending letters to my mom. He was sending letters to my son and me. And my mom, I didn't want her to be harassed with the letters. But the letters to me and my son, they weren't threatening in any way and actually, he was drawing -- he's an artist, too, so he was drawing pictures to my son who has Down [S]yndrome and my son did kind of like that so I thought it would be okay if it wasn't threatening for him to send them to my son and me.
>
> Q. Did you in any way feel safe about where he was at that point?
>
> A. Yeah, I knew he was in prison so he couldn't do anything to harm me anyway.

*Id.* at 113-114.

At that point, appellant's counsel objected. The trial court stated:

> Ladies and gentlemen of the jury, you just heard the witness reference the fact that [appellant] may have been incarcerated at the time this occurred. I'm directing you to disregard that evidence, other than to answer the question that was asked as to whether she felt safe about where [appellant] was.

You should not read anything into that information one way or the other. The fact that he may have been incarcerated is really neither here nor there in terms of your decisions in this case.

*Id.* at 114.

At the lunch break in the trial after the Commonwealth rested, appellant's attorney moved for a mistrial for England's notifying the jury that appellant was incarcerated. The trial court denied the motion. (*Id.* at 140.)

The jury convicted appellant of the aforementioned crimes. Appellant waived a pre-sentence investigation report. The trial court sentenced appellant to an aggregate term of 2½ to 6 years. On July 7, 2017, appellant filed a post-sentence motion and sought a reduced sentence because the sentence he received was manifestly excessive and clearly unreasonable under the circumstances. The trial court denied the motion on July 11, 2017.

On August 10, 2017, appellant filed a notice of appeal. On August 11, 2017, the trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied with the order on September 1, 2017. The trial court filed its Pa.R.A.P. 1925(a) opinion on October 12, 2017.

Appellant raises the following issues for this court's review:

1. Did the trial court abuse its discretion in failing to declare a mistrial after [England] referenced [appellant's] incarceration which was in no way related to the subject matter and the testimony was prejudicial?

2. Was the trial court's aggregate sentence of two and one[-]half (2½) to six (6) years of incarceration manifestly excessive under the circumstances and an abuse of the [trial c]ourt's discretion?

Appellant's brief at 8.

Initially, appellant contends that the trial court abused its discretion when it failed to declare a mistrial after England testified that appellant was incarcerated which was in no way related to the subject matter of the current prosecution and the testimony was prejudicial.

> The standard governing our review of a trial court's refusal to grant a request for a mistrial has been previously well summarized by this Court:
>
>> The decision to declare a mistrial is within the sound discretion of the court and will not be reversed absent a "flagrant abuse of discretion." ***Commonwealth v. Cottam***, 420 Pa.Super. 311, 616 A.2d 988, 997 (1992); ***Commonwealth v. Gonzales***, 415 Pa.Super. 564, 570, 609 A.2d 1368, 1370-71 (1992). A mistrial is an "extreme remedy . . . [that] . . . must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial." ***Commonwealth v. Vazquez***, 421 Pa.Super. 184, 617 A.2d 786, 787-88 (1992) (citing ***Commonwealth v. Chestnut***, 511 Pa. 169, 512 A.2d 603 (1986), and ***Commonwealth v. Brinkley***, 505 Pa. 442, 480 A.2d 980 (1984)). A trial court may remove taint caused by improper testimony through curative instructions. ***Commonwealth v. Savage***, 529 Pa. 108, 602 A.2d 309, 312-13; ***Commonwealth v.***

> *Richardson*, 496 Pa. 521, 437 A.2d 1162 (1981). Courts must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required. *Richardson*, 496 Pa. at 526-527, 437 A.2d at 1165. The circumstances which the court must consider include whether the improper remark was intentionally elicited by the Commonwealth, whether the answer was responsive to the question posed, whether the Commonwealth exploited the reference, and whether the curative instruction was appropriate. *Id.*

> *Commonwealth v. Stilley*, 455 Pa.Super. 543, 689 A.2d 242, 250 (1997).

*Commonwealth v. Bracey*, 831 A.2d 678, 682-683 (Pa.Super. 2003), *appeal denied*, 844 A.2d 551 (Pa. 2004).

Further, Rule 605(B) of the Pennsylvania Rules of Criminal Procedure provides: "When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." Pa.R.Crim.P. 605(B).

In the present case, England testified on cross-examination that after the incidents with appellant, she still permitted appellant to write letters to her and her son. On redirect, England was asked whether she felt safe accepting letters from appellant. England replied, "Yeah, I knew he was in prison so he couldn't do anything to harm me anyway." (Notes of testimony, 6/27/17 at 114.) Appellant's counsel objected. However,

appellant's counsel did not move for a mistrial until after the jury left for lunch. Appellant's counsel moved for a mistrial on the basis that England informed the jury that appellant was incarcerated. The trial court denied the motion and remarked, "well, it's a little late for that, isn't it?" (*Id.* at 140.)

Appellant failed to comply with Pa.R.Crim.P. 605 because he failed to move for a mistrial at the time England mentioned that appellant was incarcerated. Appellant's motion was untimely under the rule. He is precluded from raising the issue here. In any event, the court's curative instruction given at the time of appellant's initial objection was sufficient to cure any prejudice.

Appellant next contends that the trial court's aggregate sentence of 2½ to 6 years of incarceration was so manifestly excessive as to constitute too severe a punishment and an abuse of the court's discretion, as it was not consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of appellant and the trial court did not impose an individualized sentence which took into consideration appellant's circumstances and needs.

Appellant challenges the discretionary aspects of his sentence.

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. . . . [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice,

bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Commonwealth v. Moury*, 992 A.2d 162, 169-170 (Pa.Super. 2010)

(citation omitted).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Sierra*, [752 A.2d 910, 912 (Pa.Super. 2000)]. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (citation omitted).

Here, we begin our analysis by determining whether appellant has complied with the procedural requirements of challenging the discretionary aspects of her sentence. First, appellant timely filed his notice of appeal. Second, appellant raised the issue that the trial court imposed a sentence that was excessive and did not take into account his rehabilitative needs in his post-sentence motion. Third, appellant included a Rule 2119(f) statement in his brief in which he avers that he raises a substantial question in that his sentence did not focus on his rehabilitative needs and, instead, focused on the seriousness of the offenses. Fourth, the court must next determine whether appellant raised a substantial question for this court's review.

We determine whether an appellant raises a substantial question on a case-by-case basis. *Commonwealth v. Swope*, 123 A.3d 333 (Pa.Super. 2015). "A substantial question exists only when an appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* at 338 (citation omitted).

Appellant argues that he raises a substantial question for essentially two reasons. First, he argues that the sentence was excessive because the trial court failed to consider his rehabilitative needs. Second, appellant argues that the sentence was excessive due to the consecutive nature of the

sentences. This court has held that a challenge to the imposition of consecutive[2] sentences as unduly excessive, together with a claim that the trial court failed to consider a defendant's rehabilitative needs when fashioning its sentence, presents a substantial question. *Commonwealth v. Bonner*, 135 A.3d 592 (Pa.Super. 2016). As appellant has presented a substantial question, we will address this claim on the merits.

With respect to the trial court's alleged failure to consider the rehabilitative needs of appellant, we first note that appellant waived the production of a pre-sentence investigation report that would have contained information regarding appellant's rehabilitative needs. (Notes of testimony, 6/29/17 at 2.) Second, the trial court imposed a standard range sentence upon appellant that was much less than what the Commonwealth sought. In fact, the Commonwealth sought an aggravated sentence on the criminal trespass conviction and consecutive guideline sentences on the simple assault, indecent assault, and indecent exposure convictions. (*Id.* at 4.) This court is only permitted to vacate a sentence within the guidelines if it is unreasonable or the trial court misapplied the guidelines. 42 Pa.C.S.A. § 9781(c)(1-2). There is no indication here that the trial court misapplied the guidelines, that the sentence was unreasonable. Third, at the

---

[2] Appellant was concurrently sentenced to a term of imprisonment of 1 to 3 years for simple assault and criminal trespass. He was consecutively sentenced to a term of imprisonment of 1 to 3 years for indecent assault. Appellant was consecutively sentenced to a term of 6 to 12 months for indecent exposure.

sentencing hearing, the trial court heard appellant and appellant's attorney address appellant's difficult childhood, educational progress, drug and alcohol treatment, relationship with his children, and his participation in religious activities. As the trial court was present and commented at times during these statements, it would appear that the trial court did consider the rehabilitative needs in fashioning the sentence. Fourth, the trial court stated that it would make appellant eligible for any programs in the state prison system that would be beneficial to him. (*Id.* at 11.) Appellant has not satisfied his burden of proving that the trial court abused its discretion by imposing a manifestly unreasonable sentence.

Appellant also challenges the aggregate sentence as clearly unreasonable because the trial court imposed consecutive rather than concurrent sentences.

Section 9721 of the Sentencing Code ("Code"), 42 Pa.C.S.A. § 9721, permits the sentencing court to use its discretion to impose a sentence consecutively or concurrently to other sentences that the sentencing court is imposing. "In imposing a sentence, the trial judge may determine whether, given the facts of a particular case, a sentence should run consecutive to or concurrent with another sentence being imposed." *Commonwealth v. Perry*, 883 A.2d 599, 603 (Pa.Super. 2005). The trial court did not abuse its discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/20/18